Case: 1:26−cv−02616 JURY DEMAND
Assigned To : Cooper, Christopher R.
Assign. Date : 7/24/2026
Description: Employ. Discrim. (H−DECK)

EEOC Charge No.: 570-2025-04872

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

TEAMICIA GREENE,
911 Edgewood Road
Edgewood, MD 21040,
Plaintiff,
v.
NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),
One Massachusetts Avenue, NW
Washington, D.C. 20001,
Defendant.
Civil Action No.: ______________________
**JURY TRIAL DEMANDED**

# COMPLAINT FOR EMPLOYMENT DISCRIMINATION, RETALIATION, AND RELATED CLAIMS

## INDEX OF EXHIBITS

Ex. A. Termination Letter, dated July 16, 2025

Ex. B. Litigation Hold and Preservation Demand, dated July 18, 2025

Ex. C. Separation Letter produced via FOIA request, dated July 17, 2025

Ex. D. Letter of Recommendation from Associate General Counsel Simone Williams, Esq., dated October 14, 2025

Ex. E. Letter of Recommendation from Director Na'im A. Rahmaan, dated October 15, 2025

Ex. F. EEOC Inquiry Notice, EEOC Charge No. 570-2025-04872, dated September 24, 2025

Ex. G. EEOC Charge of Discrimination, EEOC Charge No. 570-2025-04872, dated April 29, 2026

Ex. H. EEOC Notice of Right to Sue, dated April 30, 2026

Ex. I. Correspondence from Amtrak Outside Counsel confirming rehire eligibility, dated June 15, 2026

Ex. J. FOIA/Privacy Act Request and Amtrak's responsive correspondence

Ex. K. Contemporaneous public news report confirming the termination of Robert Grasty, Amtrak Executive Vice President and Chief Human Resources Officer, dated March 21, 2025

## I. NATURE OF THE ACTION

1. This is a civil action for employment discrimination and retaliation arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1991.

2. Ms. Greene is a former Amtrak employee with approximately seven years and three months of unblemished service, no prior disciplinary record, and a September 2024 promotion to Lead

RECEIVED
JUL 24 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Claims Specialist. Fewer than ten months after that promotion, she was placed on a Performance Improvement Plan ("PIP") and terminated not because her performance failed to improve but because the Director who drove the termination decision, Rosa Richmond, had predetermined her outcome, never meaningfully engaged with Ms. Greene during the PIP, and acted on animus related to Ms. Greene's race rather than documented facts.

3. Ms. Greene is Black/African American. She alleges that Amtrak's disparate treatment of her during the PIP process and its decision to terminate her employment were motivated in whole or in part by her race, in violation of Title VII.

4. The evidence contradicting Amtrak's termination narrative is extensive and comes largely from Amtrak's own people and records: Ms. Greene's direct manager acknowledged significant improvement and offered a 30-day extension; two Amtrak insiders later wrote strong post-termination recommendation letters; the manager marked Ms. Greene "rehireable" on termination paperwork; Amtrak later represented in October 2025 that Ms. Greene was not eligible for rehire/reinstatement; and Amtrak's outside counsel confirmed in writing on June 15, 2026 that Ms. Greene remained "eligible to rehire" in Amtrak's system.

5. Amtrak's post-termination conduct compounded the harm. It failed to advise Ms. Greene of Railroad Retirement Board ("RRB") unemployment filing requirements during months of active communications, obstructed her attempts to obtain her personnel records, produced inconsistent termination documentation showing different effective termination dates, and represented that certain requested records no longer existed despite a preservation demand that had already been served. As set forth below, much of this post-termination conduct constitutes unlawful retaliation for Ms. Greene's protected activity, including her September 24, 2025 EEOC inquiry and her April 29, 2026 EEOC charge.

## II. PARTIES

6. Plaintiff Teamicia Greene is a resident of Edgewood, Maryland (Harford County). She was employed by Amtrak for approximately seven years and three months until her wrongful termination on July 16, 2025.

7. Defendant National Railroad Passenger Corporation ("Amtrak") is a federally chartered corporation organized under 49 U.S.C. § 24101 et seq. Amtrak maintains its principal offices at One Massachusetts Avenue, NW, Washington, D.C. 20001, and regularly conducts substantial business operations within the District of Columbia, where Plaintiff's position was based.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

9. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein were committed in the District of Columbia, where Plaintiff was employed and where Defendant maintains its principal offices.

10. Plaintiff timely filed EEOC Charge No. 570-2025-04872 on April 29, 2026, alleging race discrimination and retaliation (Ex. G), and received a Notice of Right to Sue dated April 30, 2026 (Ex. H). This Complaint is filed within 90 days of receipt of that notice. This charge was timely filed within the applicable 300-day period, rather than the standard 180-day period, because the District of Columbia is a dual-filing/deferral jurisdiction that extends the EEOC charge-filing deadline to 300 days. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

## IV. FACTUAL ALLEGATIONS

### *A. Employment History and Record*

11. Ms. Greene began her employment with Amtrak in or around May 2018. During approximately seven years and three months of service, she maintained an exemplary record with no prior formal discipline, performance warnings, or adverse employment actions of any kind. She handled complex general liability and tort claims involving negotiations ranging from thousands of dollars to $695,000 and higher.

12. In September 2024, Amtrak promoted Ms. Greene to Lead Claims Specialist, a promotion endorsed by both her direct manager and her director. In that role, she trained, and mentored fellow claims specialists while also managing her own active caseload.

13. At the time of her promotion, Ms. Greene had developed strong professional relationships throughout Amtrak's organization, reflected in the post-termination recommendation letters she later received from Amtrak Associate General Counsel Simone Williams, Esq. and Amtrak Director Na'im A. Rahmaan.

### *B. The July 2024 Incident, the PIP, and Documented Improvement*

14. On or about July 2024, a work-related incident occurred involving Director Richmond, after which Ms. Greene was treated differently than similarly situated employees outside her protected class. Director Richmond directed Manager Foran to issue Ms. Greene a verbal warning, although other employees who engaged in comparable work-related conduct did not receive comparable discipline.

15. In or around late February through March 2025, before Ms. Greene was placed on the PIP, Ms. Greene received notice that several Black/African American leaders were no longer employed by Amtrak in close succession, including Adrienne Gaston, Assistant Vice President of Claims, and Cheryl Shultz, Assistant Vice President and Managing Deputy General Counsel. During this same period, Robert Grasty, Executive Vice President and Chief Human Resources Officer, was terminated, as confirmed by contemporaneous public reporting dated March 21, 2025 (Ex. K). Ms. Greene does not have personal knowledge of the specific reasons for Ms. Gaston's or Ms. Shultz's

separations from Amtrak. She alleges, upon information and belief, that this concentration of departures of Black leadership within Amtrak's claims, legal, and human resources functions in the weeks immediately preceding her own PIP and termination is part of the broader factual context surrounding her claims, and Plaintiff will seek discovery regarding the circumstances of these departures and any related organizational changes during this period.

16. On April 1, 2025, fewer than ten months after her promotion, Ms. Greene was placed on a PIP while carrying a pending caseload exceeding 180 files. Her manager, Jennifer Foran, was aware of that volume.

17. At least one other employee in the unit, a Caucasian claims specialist with a comparable or heavier caseload than Ms. Greene at the time Ms. Greene was placed on the PIP, was not placed on a PIP. This disparity is a central element of Plaintiff's disparate treatment claim, and Plaintiff will identify this comparator by name in discovery.

18. The systemic nature of the unit's workload was later confirmed when Amtrak hired additional employees to address the caseload after Ms. Greene's termination.

19. Throughout the PIP period, Ms. Greene met regularly with Manager Foran, continued to work all assigned claims, including newly received files, and made measurable progress. By the end of the PIP, she had reduced her pending caseload from more than 180 files to under 130 files, with matters current.

20. In Ms. Greene's final PIP review conversation, Manager Foran acknowledged significant improvement and offered a 30-day extension if one was needed. That offer reflected the assessment of the manager who had actually administered the PIP and reviewed Ms. Greene's work firsthand.

***C. Director Richmond's Role in the Termination Decision***

21. Director Rosa Richmond was present at the commencement of the PIP and at the termination but declined to attend Ms. Greene's first PIP check-in meeting.

22. Director Richmond had no direct, substantive engagement with Ms. Greene during the PIP period. She did not sit with Ms. Greene to review files, discuss performance, or assess progress firsthand, despite reportedly being more actively involved with other employees on PIPs.

23. Despite her lack of involvement, Director Richmond communicated to Manager Foran that Ms. Greene had "not taken the PIP seriously" and that Manager Foran had been "too nice," even though those judgments were not based on direct review of Ms. Greene's work.

24. Manager Foran, who was in the best position to assess Ms. Greene's performance, personally arranged a meeting between Ms. Greene and Director Richmond as a last effort to ensure the Director understood the improvement that had occurred. Approximately one week later, Ms. Greene was terminated.

25. Manager Foran implied to Ms. Greene that the termination decision came from Director Richmond rather than from Manager Foran's own assessment. After the termination, Manager Foran also disclosed to a coworker that she had marked Ms. Greene "rehireable" on the termination paperwork she submitted to Human Resources.

***D. Termination, Preservation Demand, and Record Discrepancies***

26. Ms. Greene was terminated on July 16, 2025. On the date of termination, she was provided termination documentation reflecting July 16, 2025, as the date she left employment. (Ex. A.)

27. On July 17, 2025, the day after her termination, Ms. Greene sent a detailed professional email to Manager Foran providing substantive updates on active files, ongoing negotiations, and pending litigation matters, including one file where her last offer stood at $115,000 against a $695,000 demand. That communication further demonstrated the quality and continuity of Ms. Greene's work at the time of her separation.

28. On July 18, 2025, Ms. Greene served a formal litigation hold and preservation demand on Amtrak leadership directing preservation of communications involving herself, Director Richmond, and Manager Foran; electronic data; file review records; claims listings of all specialists; developmental and performance records; and termination paperwork. This demand provided Amtrak with timely and explicit notice of its obligation to preserve records relevant to reasonably foreseeable litigation. (Ex. B.)

29. In or around October 2025, in response to Ms. Greene's request for records, Amtrak produced a separation letter indicating that the effective date of termination was July 17, 2025. That later-produced separation letter conflicts with the documentation provided to Ms. Greene on the date of her termination reflecting July 16, 2025, and raises questions concerning the accuracy, integrity, and timing of Amtrak's termination records. (Ex. C.)

30. In that same October 2025 records response, Amtrak represented that it had no additional documents responsive to Ms. Greene's requests for her developmental plan, file reviews, and related performance materials for the 2024-2025 period because, due to her termination, those documents were no longer kept. That representation was made after Ms. Greene had already served her July 18, 2025 preservation demand specifically placing Amtrak on notice to preserve relevant materials, and closely followed, in time, both that preservation demand and Ms. Greene's September 24, 2025 EEOC inquiry (Ex. F), which itself constituted protected activity under Title VII.

31. Several weeks later, after outside counsel had been assigned, Amtrak denied further disclosure of records under Exemption 5. Amtrak's sequence of responses, first stating that no additional records were kept and later invoking an exemption to withhold records, raises substantial questions as to whether responsive materials were destroyed, withheld, reclassified, or inconsistently represented.

32. Any destruction, alteration, withholding, or failure to preserve relevant records after receipt of the July 18, 2025, preservation demand has prejudiced Ms. Greene's ability to prove her claims, including the true basis for the termination decision, the administration of the PIP, the availability of any extension, and whether the stated reason for termination was pretextual.

33. Shortly after her termination, Amtrak's in-house counsel, Ashley Smith, contacted Ms. Greene and suggested she work directly with counsel rather than involve outside attorneys, representing that attorney involvement would result in Ms. Greene receiving less. Ms. Greene nevertheless submitted a demand that included a request for reinstatement, and Ms. Smith did not respond for more than a month.

***E. Post-Termination Conduct and Timeline***

34. From the date of termination through at least February 2026, Amtrak's CNOC alert system continued placing calls to Ms. Greene's personal cell phone regarding active rail incidents, even though Amtrak maintained that she had been terminated for cause.

35. Following her termination, Ms. Greene sought unemployment benefits through the District of Columbia unemployment system. At a December 2025 hearing, she learned for the first time that, as a railroad employee, she was required to seek unemployment benefits through the Railroad Retirement Board and that a 30-day filing deadline applied from the date of termination.

36. Although Ms. Greene remained in active communication with Amtrak and its counsel from the date of termination through that hearing, no Amtrak representative advised her of the RRB filing requirement or deadline. By the time she learned of it, the deadline had expired and she had lost those benefits.

37. In or around October 2025, Amtrak represented to Ms. Greene that she was not eligible for rehire or reinstatement. Because an Amtrak director had previously indicated he would consider her for an open role if she were eligible, that representation caused Ms. Greene to forgo a specific internal employment opportunity. This representation closely followed both Ms. Greene's July 18, 2025, preservation demand and her September 24, 2025 EEOC inquiry.

38. On October 14 and 15, 2025, Ms. Greene received recommendation letters from Amtrak Associate General Counsel Simone Williams, Esq. (Ex. D) and Director Na'im A. Rahmaan (Ex. E), both of which strongly supported her professionalism and suitability for continued employment.

39. On September 24, 2025, Ms. Greene submitted an inquiry to the EEOC, later assigned the same number as her formal charge, EEOC Charge No. 570-2025-04872, and was advised of a charge-filing deadline of May 12, 2026 (Ex. F). On April 29, 2026, Ms. Greene filed EEOC Charge No. 570-2025-04872 alleging race discrimination and retaliation, a further instance of protected activity under Title VII (Ex. G).

40. On June 15, 2026, after Ms. Greene's EEOC charge was filed, Amtrak's outside counsel confirmed in writing that Ms. Greene remained "eligible to rehire" in Amtrak's system, directly contradicting the October 2025 representation that she was not eligible. This reversal, occurring after Ms. Greene engaged legal counsel and pursued her EEOC charge, is further evidence of the pretextual and inconsistent nature of Amtrak's representations regarding her rehire status. (Ex. I.)

***F. Timeline of Material Events***

| Date | Event |
|---|---|
| July 2024 | Work-related incident involving Director Richmond; Ms. Greene issued a verbal warning while comparators outside her protected class were not disciplined for comparable conduct. |
| April 1, 2025 | Plaintiff was placed on a PIP while carrying a caseload exceeding 180 files. |
| July 16, 2025 | Plaintiff was terminated and was given termination documentation reflecting July 16, 2025 as the date she left employment. |
| July 17, 2025 | Plaintiff emailed Manager Foran detailed file and negotiation updates one day after termination. |
| July 18, 2025 | Plaintiff served a formal preservation demand and litigation hold (protected activity) seeking preservation of communications, performance records, file reviews, and termination materials. |
| October 2025 | Amtrak produced a separation letter showing an effective termination date of July 17, 2025, creating a discrepancy with the July 16, 2025 termination documentation; Amtrak also represented that additional developmental plan, file review, and related records were not kept, and separately represented that Plaintiff was not eligible for rehire. |
| Several weeks later | After outside counsel was assigned, Amtrak denied further records disclosure under Exemption 5. |
| October 14-15, 2025 | Associate General Counsel Simone Williams and Director Na'im A. Rahmaan each provided Plaintiff a recommendation letter. |
| December 2025 | Plaintiff learned at a DC unemployment hearing of the RRB filing requirement and missed 30-day deadline. |
| April 29, 2026 | Plaintiff filed EEOC Charge No. 570-2025-04872 (protected activity). |
| April 30, 2026 | EEOC issued Notice of Right to Sue. |
| June 15, 2026 | Amtrak's outside counsel confirmed Plaintiff was "eligible to rehire" in Amtrak's system, reversing the October 2025 representation. |

***G. Obstruction of Records Requests***

41. Ms. Greene submitted a FOIA/Privacy Act request to Amtrak seeking her complete personnel file, PIP documentation, PIP extension policies and procedures, termination paperwork, developmental plan materials, and related records directly relevant to her claims. Amtrak imposed a fee, which Ms. Greene paid under protest, and nevertheless produced only selective and incomplete documentation. (Ex. J.)

42. Amtrak's conflicting positions regarding the existence, retention, and withholding of records are particularly troubling because the July 18, 2025, preservation demand had already put Amtrak on notice that those materials were relevant to anticipated litigation. These inconsistencies support Plaintiff's request for discovery into record retention, metadata, custodians, and any post-termination alterations to personnel and termination records.

***H. Settlement Conduct***

43. Throughout the post-termination period, Ms. Greene made repeated good-faith efforts to resolve this matter without litigation, including formal demands with itemized damages and reasonable response deadlines.

44. Amtrak's initial offer was two weeks' pay with two months of COBRA coverage. After months of delay, Amtrak's final offer remained $10,000 plus three months of COBRA coverage despite Plaintiff's claimed damages substantially exceeding that amount.

## V. CAUSES OF ACTION

**COUNT I — RACE DISCRIMINATION (DISPARATE TREATMENT)**

Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)

45. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

46. Ms. Greene is a member of a protected class under Title VII by virtue of her race (Black/African American).

47. Amtrak subjected Ms. Greene to disparate treatment, on the basis of her race, in the administration of the PIP process and in the decision to terminate her employment. At least one similarly situated employee outside Ms. Greene's protected class carried a comparable or heavier caseload and was not placed on a PIP, and Ms. Greene was denied a PIP extension that was offered to her by her own manager and that was granted to at least another comparator despite documented improvement.

48. At all times relevant to this Complaint, Ms. Greene was meeting Amtrak's legitimate performance expectations. She reduced her pending caseload from more than 180 files to under 130 files by the end of the PIP period, continued to work all assigned claims without interruption, and was assessed by Manager Foran — the individual who actually administered and reviewed her PIP performance — as having shown significant improvement warranting a 30-day extension rather than termination.

49. Director Richmond drove the termination decision without engaging directly with Ms. Greene's work during the PIP period and contrary to the assessment of the manager who actually supervised the PIP, while at least one Caucasian comparator received more favorable treatment under materially similar circumstances. This disparate treatment occurred against the backdrop of

the broader pattern of departures of Black leadership within Amtrak's claims, legal, and human resources functions described above, which Plaintiff will further develop through discovery.

50. As a direct and proximate result of Amtrak's discriminatory conduct, Ms. Greene has suffered loss of income, loss of career advancement, loss of benefits and seniority, financial hardship, emotional distress, and reputational harm.

**COUNT II — RETALIATION**

Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)

51. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

52. Ms. Greene engaged in protected activity under Title VII by (a) submitting an inquiry to the EEOC on September 24, 2025, which was later assigned EEOC Charge No. 570-2025-04872 (Ex. F), and (b) filing EEOC Charge No. 570-2025-04872 on April 29, 2026, alleging race discrimination and retaliation.

53. Following and in close temporal proximity to Ms. Greene's September 24, 2025 EEOC inquiry, Amtrak took a materially adverse action against Ms. Greene by falsely representing, in October 2025, that she was not eligible for rehire or reinstatement — a representation that would dissuade a reasonable employee from engaging in protected activity, and that Amtrak's own outside counsel later reversed in writing on June 15, 2026. Post-employment retaliation of this kind, including false or negative representations affecting future employment, is actionable under Title VII's anti-retaliation provision. See *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).

54. Amtrak's conduct regarding Ms. Greene's records requests further evidences the retaliatory motive behind its rehire-eligibility misrepresentation. In that same October 2025 period, Amtrak represented that responsive performance records no longer existed, and several weeks later — after outside counsel was assigned — invoked FOIA Exemption 5 to withhold further records, despite having already received Ms. Greene's July 18, 2025 preservation demand. This shifting and inconsistent conduct supports a reasonable inference that Amtrak's stated reasons for its actions were pretextual, as further detailed in ¶ 57 below.

55. Following the April 29, 2026, EEOC charge, Amtrak's outside counsel reversed Amtrak's prior representation and confirmed on June 15, 2026 that Ms. Greene was in fact eligible for rehire, an inconsistency that itself reflects the pretextual nature of Amtrak's earlier, less favorable representation made after Ms. Greene's initial protected activity.

56. There is a causal nexus between Ms. Greene's protected activities and Amtrak's adverse post-termination conduct, including the close temporal proximity between each protected act and the adverse conduct that followed it.

57. Amtrak's post-termination conduct regarding Ms. Greene's records further evidences the retaliatory and pretextual nature of its actions. By no later than July 18, 2025, Amtrak had actual

notice of reasonably foreseeable litigation and of its obligation to preserve evidence relevant to Plaintiff's claims because Plaintiff served a formal preservation demand identifying specific categories of records to be retained. Despite that notice, Amtrak represented that developmental plan materials, file reviews, and related performance records were no longer kept, and later invoked an exemption to withhold additional records. That discrepancy, together with the conflicting termination-date records described above, supports a reasonable inference that relevant evidence was not properly preserved, was altered, or was inconsistently represented, and is further evidence of retaliatory and pretextual motive. This conduct has impaired Plaintiff's ability to prove pretext, comparator treatment, PIP administration, and the true factual basis for the termination decision. Plaintiff seeks appropriate evidentiary relief for this conduct, including an adverse inference instruction and such other sanctions as the Court deems just, as set forth further in the Prayer for Relief below.

## VI. DAMAGES

58. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages including back pay, front pay, wage differential, lost RRB unemployment benefits, retirement losses, tax penalties, denied bonus compensation, COBRA/health coverage losses, lost employment opportunity, emotional distress, reputational harm, and other damages to be proven at trial.

59. Plaintiff also seeks punitive damages to the extent permitted, pre- and post-judgment interest, costs, and all other appropriate relief.

## VII. JURY DEMAND

60. Plaintiff demands a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff on all Counts;

b. Award back pay, front pay, and all lost compensation from July 16, 2025, through judgment;

c. Award compensatory damages for emotional distress, humiliation, reputational harm, and other non-economic losses;

d. Award damages for lost RRB unemployment benefits, retirement-account losses, penalties, lost bonus compensation, COBRA/health coverage losses, and the lost internal employment opportunity;

e. Award punitive damages as permitted by law;

f. Order discovery and appropriate relief concerning missing, altered, withheld, or inconsistently represented personnel, performance, and termination records;

g. Award all appropriate evidentiary relief, including an adverse inference instruction or other sanctions, for spoliation and failure to preserve evidence as alleged herein;

h. Award costs, interest, and such other relief as the Court deems just and proper.

Respectfully submitted,

Teamicia Greene
Pro Se Plaintiff
911 Edgewood Road
Edgewood, MD 21040
Telephone: 443-528-0218
Email: Teamiciag@hotmail.com

Dated: 7/24, 2026

**VERIFICATION**

I, Teamicia Greene, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

Teamicia Greene Teamicia Greene

Executed at: WAshington DC, on July 24, 2026