Teamicia Greene

Response due: October 4, 2026

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

TEAMICIA GREENE,

Plaintiff,

v.

NATIONAL RAILROAD PASSENGER

CORPORATION (AMTRAK),

Defendant.

Case No. 1:26-cv-02616-CRC

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S**

**PARTIAL MOTION TO DISMISS COUNT II**

Plaintiff Teamicia Greene, proceeding pro se, respectfully submits this memorandum in opposition to Defendant National Railroad Passenger Corporation's ("Amtrak") partial motion to dismiss Count II of the Complaint, which

RECEIVED
OCT 1 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

asserts retaliation under Title VII, 42 U.S.C. § 2000e-3(a). The motion should be denied. In the alternative, if the Court identifies a pleading deficiency, Plaintiff respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2).

**I. INTRODUCTION**

Count II does not allege that Plaintiff's July 2025 termination was caused by her later EEOC charge. The pleaded theory is narrower and later in time: after Plaintiff's termination and after she engaged in protected activity, Amtrak responded on October 10, 2025 that it was unable to meet Plaintiff's demand and/or provide reinstatement. Plaintiff had requested reinstatement to three identified open positions, including her former position, and reasonably understood Amtrak's response to mean that reinstatement was foreclosed. She did not apply to those positions as a result. That is a materially adverse action under Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006), because it would dissuade a reasonable worker from pursuing a discrimination charge.

Amtrak's motion rests principally on exhaustion — the argument that this post-termination conduct was never presented to the EEOC and therefore falls outside the scope of Plaintiff's Charge. That argument fails on the current record. Plaintiff disclosed the denial-of-reinstatement conduct and the rehire-eligibility discrepancy directly to the EEOC investigator, Nohemi Enriquez, during a telephone interview on April 21, 2026 — before her Charge was signed and before the EEOC issued its Notice of Right to Sue the very next day after signature. Ms. Enriquez told Plaintiff, in substance, that this category of post-termination conduct was not something her office handled. The absence of that conduct from the written Charge narrative therefore reflects the agency's own scoping decision, not any omission by Plaintiff. See Declaration of Teamicia Greene ("Greene Decl.") ¶¶ 9–15. This is precisely the kind of notice that satisfies the "like or reasonably related" exhaustion standard, because the agency actually knew of the conduct and made a conscious decision not to pursue it further — not because Plaintiff concealed or failed to raise it.

To the extent Amtrak also moves under Rule 12(b)(1) on the theory that exhaustion is jurisdictional, that theory is foreclosed by controlling Supreme Court precedent. Title VII's charge-filing requirement is a mandatory claim-processing rule, not a jurisdictional prerequisite. Fort Bend County v. Davis, 587 U.S. 541, 551–52 (2019). Dismissal on that ground therefore cannot be granted under Rule 12(b)(1) and must instead be evaluated, if at all,

under the Rule 12(b)(6) plausibility standard set out below — under which Plaintiff's well-pleaded allegations, taken as true, state a plausible claim.

**II. FACTUAL BACKGROUND**

1. Plaintiff was employed by Amtrak for nearly eight years without prior disciplinary action, was promoted to Lead Claims Specialist in September 2024 on the joint recommendation of her manager and director, was placed on a Performance Improvement Plan ("PIP") on April 1, 2025, and was terminated on July 16, 2025. Greene Decl. ¶ 2.

2. On July 18, 2025, two days after her termination, Plaintiff sent a written litigation-hold and preservation letter to William Herrmann, Amtrak's Executive Vice President and Chief Legal and Human Resources Officer, and Alan Ness, Amtrak's AVP of Claims. Greene Decl. ¶ 3; Ex. A. She thereafter engaged in an extended, direct negotiation with Amtrak concerning her termination, her discrimination allegations, and possible reinstatement or rehire, continuing through 2026.

3. Plaintiff submitted an online inquiry to the EEOC on September 24, 2025. Due to a lapse in agency operations, that inquiry was not converted into a formal Charge, No. 570-2025-04872, until April 2026.

4. On September 15, 2025, Plaintiff sent Ashley G. Smith, Amtrak's in-house counsel, a written email stating that there appeared to be three open positions she was more than qualified for, including her former position, and seeking reinstatement to those positions with seniority backdated to July 16, 2025 and continuity of service. Greene Decl. ¶ 6; Ex. B.

5. On October 10, 2025, Ashley G. Smith, Amtrak's Deputy General Counsel, emailed Plaintiff — copying William Herrmann, Alan Ness, and Karen Rabin — stating in relevant part: "We are unable to meet your current demand and/or provide reinstatement." Plaintiff reasonably understood this to foreclose reinstatement to the three identified positions and did not apply to them. Greene Decl. ¶ 7; Ex. C.

6. On April 21, 2026, Plaintiff was interviewed by telephone by EEOC investigator Nohemi Enriquez in connection with her Charge. Plaintiff described the PIP, her termination, her ongoing negotiations with Amtrak, her request for reinstatement to the three identified positions, Amtrak's October 10, 2025 denial, and her awareness — predating this Interview — that her manager had marked her eligible for rehire on internal termination paperwork,

which she understood to be inconsistent with Amtrak's denial of reinstatement. Ms. Enriquez told Plaintiff that this post-termination conduct was not something her office handled and referred her elsewhere. Greene Decl. ¶¶ 9–13.

7. Plaintiff's Charge was acknowledged as signed on April 29, 2026. The EEOC issued its Dismissal and Notice of Right to Sue the following day, April 30, 2026 — leaving no meaningful window between the Interview and the agency's closure of the Charge in which the written narrative could have been revised to add the post-termination conduct Plaintiff had already disclosed verbally. Greene Decl. ¶ 14.

8. In June 2026, Amtrak's outside counsel sent communications describing Plaintiff as eligible for rehire and stating she could apply for open roles. Plaintiff requested clarification the same day and did not receive a substantive response. Plaintiff does not contend that this exchange was a separate adverse action; it is offered as further context for the rehire-eligibility discrepancy she had already raised with the EEOC in April. Greene Decl. ¶ 16.

9. During the PIP, Plaintiff's direct manager acknowledged her progress and supported a 30-day extension that Plaintiff did not receive, while another employee in the unit reportedly did receive such an extension under comparable circumstances. Plaintiff offers this as context bearing on pretext and reserves further development of this comparator through discovery.

**III. LEGAL STANDARD**

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). The Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. A complaint need only contain sufficient factual matter to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Because Plaintiff proceeds pro se, the Complaint must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. Oviedo v. Wash. Metro. Area Transit Auth., 948 F.3d 386, 397 (D.C. Cir. 2020).

To the extent Amtrak's motion also invokes Rule 12(b)(1), that Rule is the wrong vehicle for an exhaustion argument. Failure to exhaust administrative remedies under Title VII is a mandatory claim-processing rule subject to waiver and estoppel, not a jurisdictional bar; a district court retains subject-matter jurisdiction over an unexhausted

Title VII claim. Fort Bend County v. Davis, 587 U.S. 541, 551–52 (2019). Any exhaustion argument Amtrak raises should therefore be analyzed under Rule 12(b)(6), where Plaintiff's factual allegations are taken as true, not under Rule 12(b)(1), where the Court could otherwise weigh evidence outside the pleadings.

**IV. ARGUMENT**

***A. The current record shows Count II is exhausted: the EEOC investigator had actual, direct notice of the post-termination conduct at issue.***

The exhaustion inquiry asks whether the judicial claim is like or reasonably related to the allegations made to the agency and whether it could reasonably be expected to grow out of an agency investigation. Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995); Maryland v. Sodexho, Inc., 474 F. Supp. 2d 160, 161–62 (D.D.C. 2007). Courts in this Circuit construe that standard liberally in favor of the charging party, particularly where, as here, the charging party proceeded pro se before the agency.

This is not a case where the agency was left in the dark. Plaintiff's declaration establishes that she personally told the assigned EEOC investigator — by name, on a specific date, during a recorded interview conducted as part of the Charge process — about Amtrak's October 2025 denial of reinstatement and the rehire-eligibility discrepancy she had already learned of. Greene Decl. ¶¶ 11–12. The investigator did not tell Plaintiff this conduct was irrelevant or outside the statute; she told Plaintiff it was "not something her office handled" and referred Plaintiff elsewhere. Greene Decl. ¶ 13. That is an agency scoping decision, made with full knowledge of the facts, not a failure of disclosure by Plaintiff. Where an EEOC charge results from an investigator's own narrowing of a claimant's account, the charging party should not bear the consequence of that narrowing at the pleading stage. See Park, 71 F.3d at 907 (exhaustion analysis looks to what the agency could reasonably have investigated, not merely the words of the written charge).

The timeline reinforces this reading. Plaintiff's Charge was acknowledged as signed on April 29, 2026, and the EEOC issued its Dismissal and Notice of Right to Sue the very next day. Greene Decl. ¶ 14. There was no meaningful period in which Plaintiff could have sought to add the post-termination conduct to the written narrative even had she wished to; the agency closed the file within twenty-four hours of the signature it had just obtained. On

this record, Plaintiff did everything a diligent, pro se charging party could do to place this conduct before the agency.

Amtrak's exhaustion argument therefore asks this Court to penalize Plaintiff for the EEOC's own decision not to include conduct it was actually told about. That is not the purpose of the exhaustion requirement, which exists to give the agency notice and an opportunity to investigate and conciliate — not to trap unrepresented claimants who did exactly what the process asked of them. See Marshall v. Fed. Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997) (exhaustion requirement should not be applied so as to bar Title VII claims where the purposes of the exhaustion requirement have otherwise been satisfied).

***B. Plaintiff plausibly alleges a materially adverse post-termination action.***

An action is materially adverse for purposes of a retaliation claim if it might dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Retaliation claims may rest on conduct occurring after employment ends. Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997); Passer v. Am. Chem. Soc., 935 F.2d 322, 331 (D.C. Cir. 1991).

Plaintiff identified three specific open positions and formally requested reinstatement to them. Amtrak's counsel responded that it was unable to provide reinstatement. Plaintiff reasonably understood that response as foreclosing those specific opportunities and, relying on that understanding, did not submit applications. Greene Decl. ¶ 7. A defendant's response that deters a plaintiff from pursuing identified, existing opportunities is itself an adverse action under Burlington Northern; a plaintiff need not first submit a formal application only to have it futilely rejected before the deterrent effect becomes actionable.

Amtrak's own subsequent conduct corroborates the plausibility of this theory. In June 2026, Amtrak's counsel represented that Plaintiff was in fact eligible for rehire — a description in some tension with the October 2025 statement that reinstatement could not be provided. Greene Decl. ¶ 16. That apparent inconsistency is a matter for discovery, but at the pleading stage it supports rather than undermines the plausibility of Plaintiff's theory that the October response operated as a deterrent rather than a neutral, good-faith answer.

***C. Plaintiff plausibly alleges causation.***

Temporal proximity between protected activity and an adverse action can support an inference of causation at the pleading stage. Talavera v. Shah, 638 F.3d 303, 313 (D.C. Cir. 2011). Plaintiff's EEOC inquiry was submitted on September 24, 2025; Amtrak's denial of reinstatement followed on October 10, 2025 — sixteen days later, through the same counsel handling Amtrak's response to Plaintiff's discrimination allegations. That proximity, combined with the decisionmaker's direct involvement in both the discrimination dispute and the reinstatement denial, supports a plausible inference of retaliatory motive sufficient to survive a motion to dismiss. Discovery will bear on the ultimate weight of that inference; it need not be conclusively proven at this stage.

***D. The declaration properly supports, rather than substitutes for, the Complaint, and does not require conversion to summary judgment.***

Under Rule 12(d), a court that considers matters outside the pleadings on a Rule 12(b)(6) motion must ordinarily convert it to one for summary judgment, with notice to the parties. Plaintiff's declaration is offered for a narrower purpose: to place before the Court, in admissible form, facts bearing on exhaustion that are already consistent with and supportive of the Complaint's existing allegations. A court may consider a declaration addressing exhaustion without converting the motion, because exhaustion implicates the scope of the claims properly before the Court rather than the truth of the underlying merits. To the extent the Court disagrees, Plaintiff respectfully requests the opportunity, consistent with Rule 12(d), to be heard further before any conversion, rather than dismissal without that opportunity.

**V. ALTERNATIVE REQUEST FOR LEAVE TO AMEND**

If the Court concludes that Count II's post-termination theory requires more detailed pleading than the current Complaint provides, Plaintiff respectfully requests leave to amend under Rule 15(a)(2), which directs that leave be freely given when justice so requires. Any amendment would particularize the existing post-termination retaliation theory — including the facts set out in the accompanying declaration — rather than introduce a new claim. Given Plaintiff's pro se status and the substantial factual support already in the record, dismissal with prejudice would be an unnecessarily harsh result; dismissal without prejudice and leave to amend, or denial of the motion outright, is the appropriate outcome.

**VI. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Deny Defendant's partial motion to dismiss Count II;

2. To the extent the motion is brought under Rule 12(b)(1), deny it on the ground that Title VII exhaustion is non-jurisdictional under Fort Bend County v. Davis;

3. In the alternative, if the Court finds Count II insufficiently pleaded, dismiss it without prejudice and grant Plaintiff leave to amend under Rule 15(a)(2); and

4. Grant such other and further relief as the Court deems just and proper.

**EXHIBIT INDEX**

Exhibit A — Declaration of Teamicia Greene.

Exhibit B — July 18, 2025 preservation/litigation-hold letter to William Herrmann and Alan Ness.

Exhibit C — September 15, 2025 email to Ashley G. Smith requesting reinstatement.

Exhibit D — October 10, 2025 email from Ashley G. Smith re: demand follow-up.

Exhibit E — June 15, 2026 and June 24, 2026 emails with Bria M. Cochran re: rehire eligibility.

Exhibit F — April 29 and April 30, 2026 EEOC emails from/to Nohemi Enriquez referencing the Interview and signature deadline.

*[Any settlement-context communications remain subject to Fed. R. Evid. 408; Plaintiff offers them for chronology and notice only, not as admissions of liability.]*

Dated: 10/1/26

Respectfully submitted,

Teamicia Greene

911 Edgewood Rd

Edgewood, MD 21040

443-528-0218

Plaintiff, Pro Se

**CERTIFICATE OF SERVICE**

I certify that on [date service completed], I served a copy of the foregoing Plaintiff's Memorandum in Opposition to Defendant's Partial Motion to Dismiss Count II, and the accompanying Declaration of Teamicia Greene, on counsel for Defendant by [CM/ECF filing, which generates electronic notice to registered counsel of record] / [method permitted by the applicable rules, if counsel is not yet registered for electronic service].

Teamicia Greene

Teamicia Greene, Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

TEAMICIA GREENE,

Plaintiff,

v.

NATIONAL RAILROAD PASSENGER

CORPORATION (AMTRAK),

Defendant.

Case No. 1:26-cv-02616-CRC

**DECLARATION OF TEAMICIA GREENE IN SUPPORT OF PLAINTIFF'S**

**OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

I, Teamicia Greene, declare as follows:

1. I am the Plaintiff in the above-captioned action and am proceeding pro se. I submit this declaration in support of my opposition to Defendant's partial motion to dismiss Count II. I have personal knowledge of the facts stated in this declaration except where I identify information reported to me by others, and if called as a witness, I could and would testify competently to them.



Exhibit A

2. My employment with Amtrak ended on July 16, 2025, at approximately 2:00 p.m. My own contemporaneous July 18, 2025 letter to Amtrak states this date and time, and states that my termination followed a 90-day Performance Improvement Plan ("PIP") issued April 1, 2025, for asserted inability to perform my duties as a Lead Claims Specialist. [NOTE: a separation letter later produced through my FOIA request reportedly bears a different date, July 17, 2025; this one-day discrepancy does not affect the timeline below and I do not know its cause.]

3. On July 18, 2025, two days after my termination, I sent a written letter to William "Byl" Herrmann, Amtrak's Executive Vice President and Chief Legal and Human Resources Officer, and Alan Ness, Amtrak's AVP of Claims, giving formal notice of my intent to pursue legal action and instructing Amtrak to preserve all relevant evidence, including electronic records, file assignments, evaluations, and communications concerning myself and other claims department specialists from July 1, 2024 forward. I continued to communicate directly with Amtrak about the termination, my discrimination allegations, and possible reinstatement or rehire in the months that followed. I did not attach all of these communications to my original Complaint; I exchanged them directly with Amtrak, and they were already within Amtrak's own possession.

4. During the PIP, my direct manager, Jen Foran, acknowledged my progress and supported a 30-day extension. I was told that another specialist in my unit received a 30-day PIP extension under comparable or lesser circumstances. [This individual's identity can be disclosed through discovery rather than in this public filing.]

5. I was promoted to Lead Claims Specialist in September 2024, approximately ten months before my employment ended, on the recommendation of both my manager and my director. In or around mid-August to early September 2025, after my termination, I spoke verbally with Na'im Rahmaan, a Claims Director at Amtrak, about open positions. During that conversation, Mr. Rahmaan gave me a favorable recommendation and described me as strong, knowledgeable, and a good worker. I do not have a written record of this conversation or its exact date.

6. On September 15, 2025, I sent Ashley G. Smith, Amtrak's in-house counsel, a written email stating that there appeared to be three open positions I was more than qualified for, including my former position, and requesting reinstatement with seniority backdated to July 16, 2025 and continuity of employment. I was requesting reinstatement to those identified positions — not merely asking for permission to submit a new application.

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

7. On October 10, 2025, I received an email from Ashley G. Smith, Amtrak's Deputy General Counsel, copying William Herrmann, Alan Ness, and Karen Rabin, stating in relevant part: “We are unable to meet your current demand and/or provide reinstatement.” I understood this response to mean that reinstatement was unavailable to me, including for the positions I had identified, and for that reason I did not submit applications for those positions.

8. A coworker of mine in my former unit told me that my direct manager had marked me as eligible for rehire on internal paperwork submitted in connection with my termination. [This individual's identity can be disclosed through discovery rather than in this public filing.] I did not personally see that internal paperwork.

9. On or about April 21, 2026, I participated in a telephone interview with Nohemi Enriquez of the EEOC Washington Field Office, in connection with my Charge, No. 570-2025-04872 (the “Interview”).

10. During the Interview, I described to Ms. Enriquez, in detail, the events leading to my termination from Amtrak, including the PIP I was placed on in April 2025 and my termination on July 16, 2025.

11. During the Interview, I also told Ms. Enriquez that I had been actively negotiating with Amtrak following my termination, that I had requested reinstatement to my former position and to the other open positions identified above, and that Amtrak had denied my request for reinstatement, including through the October 10, 2025 communication described above.

12. During the Interview, I further told Ms. Enriquez that I had been made aware, before that time, that my direct manager had marked me as eligible for rehire on internal paperwork connected with my termination, and that this appeared inconsistent with Amtrak's denial of my reinstatement request. I disclosed this to Ms. Enriquez before I raised the same rehire-eligibility inconsistency with Amtrak's counsel in my June 5, 2026 correspondence.

13. In response, Ms. Enriquez told me, in substance, that the post-termination conduct I had just described — Amtrak's denial of reinstatement and the rehire-eligibility discrepancy — was not something her office handled, and she referred me to the U.S. Department of Labor's worker.gov resource for that issue. I did not pursue that referral. I understood her statement to mean that this post-termination conduct would not be separately investigated by, or included in the written Charge narrative through, the EEOC's Washington Field Office.

14. Following the Interview, the EEOC sent me a short written charge document, approximately four to five sentences in length, and asked me to sign it. My charge of discrimination was acknowledged as signed on April 29, 2026. The very next day, April 30, 2026, the EEOC issued its Dismissal and Notice of Rights, closing Charge No. 570-2025-04872 and notifying me of my right to sue.

15. I did not omit the post-termination reinstatement and rehire-eligibility conduct from my EEOC Charge by choice. I disclosed this conduct fully and in detail to Ms. Enriquez during the April 21, 2026 Interview, before the Charge was signed and before the EEOC issued its Dismissal and Notice of Rights. The absence of this conduct from the written Charge narrative reflects Ms. Enriquez's own statement that her office did not handle that category of conduct — not any decision, omission, or concealment on my part.

16. On June 15, 2026, I received an email from Bria M. Cochran, Amtrak's outside counsel at Jackson Lewis P.C., stating in relevant part: "you are in Amtrak's system as eligible for rehire. We can also confirm that your manager did agree with the decision to terminate you following the unsatisfactory completion of the PIP." Approximately ninety minutes later that same day, I responded in writing, noting that this statement appeared directly inconsistent with the October 10, 2025 communication that reinstatement was unavailable, and requesting written clarification as to which position Amtrak was relying on. On June 24, 2026, Ms. Cochran responded: "I am not aware of any prior statements regarding your eligibility for rehire. To confirm, you are [marked] in Amtrak's system as 'eligible to rehire' and it is my understanding that you are free to apply for roles that are open." This response did not reconcile or otherwise address the October 10, 2025 statement that reinstatement was unavailable.

17. I personally experienced emotional harm as a result of the conduct described in this declaration, and I believe I lost wages and benefits as a result of Amtrak's denial of reinstatement; the precise amounts require confirmation from payroll, benefits, and related records.

18. I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: 10/1/2026

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

Teamicia Greene

______________________________

Teamicia Greene

Plaintiff, Pro Se

Ms. Teamicia Greene
911 Edgewood Rd
Edgewood, MD 21040
teamiciag@hotmail.com
443-528-0218

July 18, 2025

Mr. William"Byl" Herrmann & Alan Ness
Executive Vice President Chief Legal and Human Resources/AVP
Amtrak
1 Massachusetts Ave. NW 6th Floor
Washington, DC 20001

Dear Mr. Herrmann and Ness,

Please consider this letter as formal notice of my intent to pursue legal action regarding my wrongful termination from Amtrak, which occurred on July 16, 2025, at approximately 2:00 PM.

My termination letter states that my employment was ended due to an inability to perform my duties as a Lead Claims Specialist, citing failure to improve following the 90-day Performance Improvement Plan issued on April 1, 2025.

In anticipation of potential litigation related to this matter, I hereby request and instruct you to preserve and maintain all relevant evidence. Failure to comply with this request may be considered spoliation of evidence and will be addressed accordingly.

Specifically, I request that you retain and preserve the following:

All electronic evidence related to this matter, including but not limited to, company-issued laptop, cell phone records, call logs, and email correspondence from July 1, 2024, to the present.

All records, reports, evaluations, file assignments, closures, team meeting agendas, EOL reports (initial and overdue), developmental plans, goals, pager duty notifications, and any communications referencing expectations of claim handling involving myself (Teamicia Greene) and **ALL** other claims department specialists.

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

Exhibit B
Case No. 1:26-cv-02616-CRC

Please feel free to contact me if you have any questions regarding the content or purpose of this letter, or if you require clarification regarding the items to be preserved. These items are likely to be discoverable in the course of litigation.

I will provide an update once I have confirmed legal representation.

Thank you for your prompt attention to this matter.

Sincerely,

T. Greene

Teamicia Greene

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

Outlook

**Re: Formal Demand for Wrongful Termination- Teamicia Greene**

**From** teamicia greene <teamiciag@hotmail.com>
**Date** Mon 9/15/2025 12:10 PM
**To** Smith, Ashley G <Ashley.Smith.1@amtrak.com>
**Cc** teamicia greene <teamiciag@hotmail.com>

Hello Ashley,

Thank you for your response. I respectfully disagree with your conclusion. During the PIP period, I believe my overall work production contradicts the emails that were sent. In these meetings, there were many verbal conversations had, and the numbers speak for themselves.

I was placed on the PIP with a caseload greater than than180 files. By the end of the PIP, my caseload was 130 files, with approximately 6–7 files pending closure. For a file to be closed in our workflow, it must be approved and reviewed by management. At the time of my termination and the end of the PIP, all my files had been touched and worked including those assigned the day I was terminated. If I had not been making progress, more than 50 files would not have been closed and approved for closure by management.

If we're evaluating strictly by emails, the PIP appears not to have been designed for my success. I had numerous conversations with my manager in which I explained that to successfully complete the PIP (a coaching perimeter intended to help me continuously succeed in the role), I needed to review my entire inventory rather than only responding to selected emails. As my management was aware that I was in a mental state of being extremely overwhelmed and filled with anxiety due to the volume our unit was receiving with limited resources. During this period of ongoing mental anxiety, I experienced difficulties that resulted in notes not consistently being reflected in the files, even though the work itself was being done. I accepted full accountability for any gaps, and I ensured that my actions did not adversely affect colleagues. I completed reviews for over 180 files and substantially reduced the remaining inventory through closures, which required management approval and were communicated to leadership. While some files were pulled for review before I could finalize them, I had completed multiple related closures for each pulled file. In my final performance meeting, my direct manager acknowledged that the work was being completed and supported a 30-day extension of the improvement plan. Despite these efforts, I was terminated "For Cause" on July 16.

As stated, files required management approval prior to closure. That review for approval would be consistent of completed investigation (liability narratives) contact, EOL review, and all other items defined within the CRR. Which all my files will reflect that I conducted a comprehensive review and updated the overall conclusions of each one of my files. Therefore, if improvement wasn't occurring regarding investigation completion, how was over 50 of my files close within the 90-day PIP period? I encourage you to ask management what the average number of closures for a specialist is per month? How many files would a specialist be expected to touch within a month? I went through over 180 in less than 3 three months!!!

I approached my work fairly for each claimant, considering the age of the file and addressing it accordingly. A file being reviewed by management did not imply it was more important than other files still needing work. I also accounted for six-month EOL cases, 90-day reviews, mediation, and other tasks that arose during the period. Despite this, I still met department goals for the files reviewed by Lucy Franklin, which were counted toward our year-end goals.

Even being on PTO, I continued to receive new files. Consequently, the files pulled for review would naturally be ones I had not yet fully completed. Nevertheless, I still closed and worked on a considerable number of files, moving toward aligning with the CRR work process.

It's important to also highlight that I experienced significant pushback from management for request of items and information that was clearly visible and outlined in the file narratives. It became a point where I felt I was consistently defending my work. Management took issue with the word choice I used in my liability narrative. In our processes conclusions about liability must be based on the information available during the review and or findings from the investigation. Therefore, how does the statement " No known negligence on Amtrak" differ from " No liability on Amtrak'? Yet, the phrasing I used- "No known negligence" was deemed inadequate and was flagged in the team meeting and included verbatim on the agenda for the entire team's review. This appeared to be a selective standard and contributed to a sense of retaliation, given that I was performing the same tasks as colleagues who were not penalized for similar wording.

I communicated my feelings of being embarrassed by even being on the PIP as I was fully aware of my capabilities of performing my job duties. Because of this level of disappointment I felt internally, I wanted to ensure I wouldn't find myself in this situation again. Therefore, a successful completion of the PIP required me to take a broader focus to address my entire inventory, and not just the files pulled for her review, as it was essential in order for me to be in compliance with the CRR requirements even after the 90-day period concluded. My management also acknowledged that I had in fact worked on many of my files, however, the narratives didn't support my work because I kept notes separately in a notebook. These were conversations had, as Jennifer could ask me anything about a file, and I could give a full update based on my written notes verse those that were in the file narratives. Which further supports it was a lack of organization, verse the work not being completed.

Even through my manager's awareness that I was mentally overwhelmed she continued to have confidence in my progress. She noted that I had been closing a substantial number of files and supported extending the PIP by 30 days. However, Miss Richmond did not share the same view regarding my PIP completion for reasons unknown to me. To be clear, at no point did Mrs. Richmond engage with me regarding file reviews or coaching during the PIP, yet it was communicated to me that she claimed I was not taking the PIP seriously. In contrast, my inventory continued to decrease as I worked through it, indicating progress. If you review the records with my counterparts, you will see that the conditions of ***ALL*** the files I handed off were in good order at the time of my termination.

I would appreciate clarity on:

- The qualifications and criteria used to determine when a 30-day extension is granted?
- The consistency of extensions granted to other specialists under the same director versus my case?
- The role of direct managers' perspectives versus director directives in decisions about extensions and PIP outcomes? (Again, for consistently amongst all specialists. How is it that other direct managers did not support an extension, yet one was extended, and my direct manager supported my extension, and I was terminated.)
- The evidence basis for any claims that I did not complete or fulfill duties, given the documented progress, file updates, and review results.

I also want to confirm whether your investigation included actual interviewing and conversations, beyond the emails that were exchanged. There were many conversations held, and my boss was fully aware of the mental strain, anxiety, and overwhelm caused by my caseload and other factors that I was working through. A sediment that many specialists in my unit would support.

I have always shown accountability, even when issues were not my responsibility. I have consistently supported my team and taken on a heavier caseload without complaint, going above and beyond to avoid negatively impacting coworkers.

I cannot understand how I am being told that I did not fulfill my duties in the PIP when the numbers show otherwise. My workload was reduced from over 180 files, while I was still receiving new files and managing my existing caseload, even while being out of the office 3-4 weeks and never being taken off the roster (even though it was offered, which I declined to avoid burdening my counterpart). I worked through everything, updating all files, following up, and completing investigations. If I was not completing investigations, how did my manager approve the large volume of files that were closed?

Regarding the two weeks' pay and two months of COBRA, I would like to propose a reconsideration: I am willing to accept a revised compensation offer of $175,000 with reinstatement of my position, noting that there appear to be three open positions that I am more than qualified for including returning to my previous position. I would like my reinstatement date to be backdated to the date I was terminated to avoid any gap within my seniority and employment records. I want to be granted a 10% pay increase due to my inability to collect STI, and request to work remotely for at least year.

I have dedicated over seven years to Amtrak, taken accountability for my actions, and have always shown up for my team. I have been among the top specialists who carried greater workloads and never complained. I cannot accept that my performance on the PIP is being judged as incomplete or insufficient when a review of my files and the numbers would reflect otherwise. As I completed more than double the work and expectations of what another specialist would be expected to complete on a daily basis. Furthermore, I would encourage you to request the listing of files I had when placed on the PIP, and my inventory at the end of the PIP. I would also encourage you to reach out to each specialist who acquired my pending inventory and seek their perspective of the quality of the files they received. I assure you; it would paint a different picture than that of the subjective emails sent. As I explained in many conversations, with my manger that with the level of anxiety I was I working through, that I would prefer for my work speak for itself than constantly defending myself in email communications. Something in which my manager apologized for having to do, as she saw the progress and improvement.

In short, I value my work, my team, and my contribution. I am seeking fair consideration, clarity on the process, and a path back to reinstatement that reflects my performance and dedication to Amtrak.

If resolution is not possible, then I will retain Mr. Alan Lescht and Associates as my representation to address this matter moving forward.

Thank you for taking the time to review my perspective. I'm open to discussing a constructive path forward.

Teamicia Greene
443-528-0218

Outlook

## Demand Follow-up

**From** Smith, Ashley G <Ashley.Smith.1@amtrak.com>
**Date** Fri 10/10/2025 4:05 PM
**To** teamicia greene <teamiciag@hotmail.com>
**Cc** Herrmann, William ("Byl") <Byl.Herrmann@amtrak.com>; Ness, Alan D <Alan.Ness@amtrak.com>; Rabin, Keren <RabinK@amtrak.com>

Ms. Greene,

I write in response to your prior correspondence. We are unable to meet your current demand and/or provide reinstatement. Given the delta in your demand and our latest offer, I think it is best for you (or your counsel) to further discuss resolution with our external counsel. I will share the information you provided via email with our counsel to aid in productive discussions. You referenced engaging Mr. Alan Lescht and Associates. Please provide the name of the specific lawyer you are working with (preferably with their contact information) and our counsel will reach out to continue discussions with a goal of resolving this matter.

I have also received your FOA requests. FOIA requests should be submitted via the following website: https://www.amtrak.com/foia to ensure proper receipt and processing.

Best wishes,

**Ashley G. Smith** (she/her/hers)
Deputy General Counsel
Amtrak | 1 Massachusetts Avenue NW | Washington, DC 20001
Email: ashley.smith.1@amtrak.com | 202.394.6974

AMTRAK®

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

Exhibit D
Case No. 1:26-cv-02616-CRC

Outlook

## RE: 408 Confidential Settlement Communication - Teamicia Greene Wrongful Termination

**From** Cochran, Bria M. (DC) <Bria.Cochran@jacksonlewis.com>
**Date** Mon 6/15/2026 1:00 PM
**To** teamicia greene <teamiciag@hotmail.com>
**Cc** Ross, Jason A. (DC) <Jason.Ross@jacksonlewis.com>

Hi Ms. Greene,

In response to your letter, I want to let you know that you are in Amtrak's system as eligible for rehire. We can also confirm that your manager did agree with the decision to terminate you following the unsatisfactory completion of the PIP. Nevertheless, Amtrak is still offering you the $10,000 and 3 months cobra but this remains its best and final offer.

Best,
Bria

JL **Bria M. Cochran**
Attorney at Law

**Jackson Lewis P.C.**
11790 Sunrise Valley Drive
Suite 400
Reston, VA 20191
Direct: (703) 483-8336 | Main: (703) 483-8300
Bria.Cochran@jacksonlewis.com | www.jacksonlewis.com

---

**From:** teamicia greene <teamiciag@hotmail.com>
**Sent:** Friday, June 5, 2026 11:05 AM
**To:** Cochran, Bria M. (DC) <Bria.Cochran@jacksonlewis.com>
**Cc:** teamicia greene <teamiciag@hotmail.com>; Ross, Jason A. (DC) <Jason.Ross@jacksonlewis.com>
**Subject:** 408 Confidential Settlement Communication - Teamicia Greene Wrongful Termination

Hello Bria,

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

Exhibit E
Case No. 1:26-cv-02616-CRC

Outlook

**RE: 408 Confidential Settlement Communication - Teamicia Greene Wrongful Termination- Clarification & Correction of the record**

**From** Cochran, Bria M. (DC) <Bria.Cochran@jacksonlewis.com>
**Date** Wed 6/24/2026 4:18 PM
**To** teamicia greene <teamiciag@hotmail.com>
**Cc** Ross, Jason A. (DC) <Jason.Ross@jacksonlewis.com>

Hi Ms. Greene,

I am not aware of any prior statements regarding your eligibility for rehire. To confirm, you are in marked in Amtrak's system as "eligible to rehire" and it is my understanding that you are free to apply for roles that are open.

Best,
Bria

**Bria M. Cochran**
Attorney at Law

**Jackson Lewis P.C.**
11790 Sunrise Valley Drive
Suite 400
Reston, VA 20191
Direct: (703) 483-8336 | Main: (703) 483-8300
Bria.Cochran@jacksonlewis.com | www.jacksonlewis.com

**From:** teamicia greene <teamiciag@hotmail.com>
**Sent:** Monday, June 15, 2026 2:31 PM
**To:** Cochran, Bria M. (DC) <Bria.Cochran@jacksonlewis.com>
**Cc:** Ross, Jason A. (DC) <Jason.Ross@jacksonlewis.com>; teamicia greene <teamiciag@hotmail.com>
**Subject:** Re: 408 Confidential Settlement Communication - Teamicia Greene Wrongful Termination- Clarification & Correction of the record

Dear Ms. Cochran:

I write in response to your recent email communication stating that I am "in Amtrak's system as eligible for rehire" and reiterating Amtrak's settlement offer of $10,000 and three months of COBRA coverage.

As you know, on October 10, 2025, I was informed that I was not eligible for reinstatement or rehire with Amtrak. The current representation that I am “eligible for rehire” is directly inconsistent with that earlier position. These two statements cannot both be accurate. I respectfully request written clarification as to which representation Amtrak is presently relying upon, and whether the October 10, 2025 communication was incorrect or has been superseded.

In addition, the explanation provided regarding the basis for my termination does not resolve the inaccuracies and inconsistencies I have previously identified in the underlying record and related communications. I do not accept any factual characterizations that are incomplete, misleading, or inconsistent with the documented history of my employment and separation. I expressly reserve all rights, claims, and remedies.

If Amtrak’s current position is that I am, in fact, eligible for rehire, please confirm whether Amtrak is prepared to treat that status as a basis for good-faith consideration of reinstatement. If, instead, Amtrak maintains that I am not eligible for rehire, please explain how that position is reconciled with the current statement that I am “in Amtrak’s system as eligible for rehire,” and identify the specific policy or factual basis for continuing to deny reinstatement.

I am seeking clarification so that the record is accurate and the parties can proceed on a truthful basis. For the avoidance of doubt, my participation in these communications and any consideration of settlement terms should not be construed as an admission, a concession regarding the accuracy of Amtrak’s account, or a waiver of any rights, claims, or objections. I do not agree that the current settlement proposal fully or fairly resolves the matters in dispute.

Please confirm, in writing, Amtrak’s final and accurate position regarding my rehire eligibility and the status of any prior contradictory statements.

Sincerely,

Teamicia Greene

> On Jun 15, 2026, at 1:00 PM, Cochran, Bria M. (DC) <bria.cochran@jacksonlewis.com> wrote:
>
> Hi Ms. Greene,
>
> In response to your letter, I want to let you know that you are in Amtrak’s system as eligible for rehire. We can also confirm that your manager did agree with the decision to terminate you following the unsatisfactory completion of the PIP. Nevertheless, Amtrak is still offering you the $10,000 and 3 months cobra but this remains its best and final offer.
>
> Best,
> Bria

JL

**Bria M. Cochran**
Attorney at Law

**Jackson Lewis P.C.**
11790 Sunrise Valley Drive
Suite 400
Reston, VA 20191
Direct: (703) 483-8336 | Main: (703) 483-8300
Bria.Cochran@jacksonlewis.com | www.jacksonlewis.com

---

**From:** teamicia greene <teamiciag@hotmail.com>
**Sent:** Friday, June 5, 2026 11:05 AM
**To:** Cochran, Bria M. (DC) <Bria.Cochran@jacksonlewis.com>
**Cc:** teamicia greene <teamiciag@hotmail.com>; Ross, Jason A. (DC) <Jason.Ross@jacksonlewis.com>
**Subject:** 408 Confidential Settlement Communication - Teamicia Greene Wrongful Termination

Hello Bria,

Please find attached a confidential settlement communication exchanged for the purpose of resolving the above referenced dispute. This communication, and any related discussions, are provided pursuant to and protected by Federal Rule of Evidence 408 as compromise offers and negotiations.

Nothing in this email or the attached communication is intended, or should be construed, as an admission of liability or wrongdoing my me. All rights, claims, and defenses are expressly reserved.

I remain willing to engage in good-faith discussions to explore a mutually acceptable resolution and would appreciate your review and response.

Thanks,

Teamicia Greene
911 Edgewood Rd
Edgewood, MD 21040
443-528-0218
teamiciag@hotmail.com

From: EEOC no-reply@service.eeoc.gov
Subject: Time-Sensitive EEOC Final Decision for EEOC Charge 570-2025-04872 / Decisión final urgente de la EEOC por el cargo 570-2025-04872
Date: Apr 30, 2026 at 6:18:15 PM

**U.S. Equal Employment Opportunity Commission**

The Equal Employment Opportunity Commission (EEOC) has issued a final decision regarding EEOC Charge 570-2025-04872, which can be found in the document titled **DETERMINATION AND NOTICE OF RIGHTS** in the EEOC Public Portal. This email, as well as the DETERMINATION AND NOTICE OF RIGHTS, is official notice that the EEOC has dismissed the above-referenced EEOC charge and that the Charging Party has the right to sue the respondent(s) on this charge in court within 90 days of receipt of this notice. The DETERMINATION AND NOTICE OF RIGHTS also provides additional information related to filing suit under the laws enforced by the EEOC, including important time limits. Please note that the 90-day deadline for Charging Party to file a lawsuit is set by law and failure to file a lawsuit in that time may result in the inability to move forward with a lawsuit.

**You should log into the EEOC Public Portal, download and read the DETERMINATION AND NOTICE OF RIGHTS as soon as possible. You should also keep a record of the date you received this notice and save the downloaded DETERMINATION AND NOTICE OF RIGHTS.**

This email is an official notification from the Equal Employment Opportunity Commission (EEOC) regarding charge 570-2025-04872. Please do not reply to this email.

*Notice of Confidentiality: This email may contain privileged and confidential information, including information protected by federal and state privacy laws. It is intended only for the use of the person(s) named above. If you are not the*

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

exhibit F
Case No. 1:26-cv-02616-CRC

*intended recipient, you are hereby notified that any review, dissemination, distribution, or duplication of this communication is strictly prohibited and may be unlawful. If you are not the intended recipient, please contact (800) 669-4000 and destroy all copies of the original message and attachments.*

La Comisión para la Igualdad de Oportunidades de Empleo (EEOC, por sus siglas en inglés), ha emitido una decisión final con respecto al cargo de dicha Comisión 570-2025-04872, que se encuentra en el documento titulado **Determinación y Notificación de Derechos** en el Portal Público de la EEOC. Este correo electrónico, así como la Determinación y Notificación de Derechos, es un aviso oficial que indica que la EEOC ha desestimado el cargo mencionado anteriormente y que la parte acusadora tiene derecho a demandar a los responsables de este cargo en un tribunal en los 90 días posteriores a la recepción de este aviso. La Determinación y Notificación de Derechos también proporciona información adicional relacionada con la presentación de la demanda bajo las leyes aplicadas por la EEOC, incluyendo límites de tiempo importantes. Por favor, tenga en cuenta que la fecha límite de 90 días para que la parte demandante presente la demanda está determinada por ley y que, en caso de no presentarla en ese plazo, podría dar como resultado la incapacidad de seguir adelante con esta.

**Debe registrarse en el Portal Público de la EEOC, descargar y leer la Determinación y Notificación de Derechos lo antes posible. Además, debería tomar nota de la fecha en la que recibió este aviso y guardar la Determinación y Notificación de Derechos descargada.**

Este correo electrónico es una notificación oficial de la EEOC relacionado con el cargo 570-2025-04872. Por favor, no responda a este correo electrónico.

*Aviso de confidencialidad: La información contenida en este correo electrónico puede contener información privilegiada y confidencial, incluida información*

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

*protegida por las leyes de privacidad federales y estatales. Está destinada únicamente al uso de la(s) persona(s) nombrada(s) anteriormente. Si usted no es el(la) destinatario(a) previsto(a), se le notifica que cualquier revisión, difusión, distribución o duplicación de esta comunicación está estrictamente prohibida y puede ser ilegal. Si usted no es el(la) destinatario(a) previsto(a), póngase en contacto con el (800) 669-4000 y destruya todas las copias del mensaje original y los archivos adjuntos.*

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218

From: EEOC no-reply@service.eeoc.gov
Subject: Please Sign Your Charge of Discrimination / Por favor Firme su Cargo de Discriminación
Date: Apr 29, 2026 at 1:47:42 PM

**U.S. Equal Employment Opportunity Commission**
**Washington Field Office**
131 M Street, NE Fourth Floor Suite 4NWO2F Washington, DC 20507
(800) 669-4000
Website: www.eeoc.gov

04/29/2026

Ms. Teamicia Greene
911 Edgewood Rd EDGEWOOD, MD 21040

Re: Ms. Teamicia Greene v. Amtrak
EEOC Charge Number: 570-2025-04872

Dear Ms. Teamicia Greene,

This notice is being sent to you because you or your attorney, on your behalf, filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against **Amtrak**.

**You may sign this charge by using the EEOC's Public Portal. If you do not sign the charge, the EEOC may close it without taking any further action. Please sign it within 10 days of 03/30/2026.**

If you have questions about this charge, please contact NOHEMI ENRIQUEZ at NOHEMI.ENRIQUEZ@EEOC.GOV or (202) 921-3278.

**To sign your charge in the EEOC Public Portal:**

1. Go to EEOC Public Portal
2. Select "My Cases."
3. If you already have an EEOC Public Portal account associated with your teamiciag@hotmail.com email address, enter that email address and your password, then click "Sign In."
4. If you do not already have an EEOC Public Portal account associated with your

teamiciag@hotmail.com email address, click "Register" and follow the instructions. (Be sure to use your teamiciag@hotmail.com email address.)

5. Once you're logged in, you will be able to access the charge and sign it. (You will be signing it under penalty of perjury, so please review it carefully.)

After you sign your charge, you and your attorney will be able to use the EEOC Public Portal to:

- Update your contact information.
- Upload documents related to your charge.
- Request the respondent's position statement, if it submits one, and upload your response to that position statement.
- Check the status of your charge.

Sincerely,

NOHEMI ENRIQUEZ
EQUAL OPPORTUNITY INVESTIGATOR (BILINGUAL-SPANISH)

---

**Comisión para la Igualdad de Oportunidades en el Empleo de los Estados Unidos**
**Washington Field Office**
131 M Street, NE Fourth Floor Suite 4NWO2F Washington, DC 20507
(800) 669-4000
Website: www.eeoc.gov

04/29/2026

Asunto:Ms. Teamicia Greene v. Amtrak
Número de cargo de la EEOC: 570-2025-04872

Estimado(a) Ms. Teamicia Greene,

Se le envía este aviso porque usted o su abogado, en su nombre, presentó un cargo de discriminación ante la Comisión para la Igualdad de Oportunidades en el Empleo de

Estados Unidos (EEOC, por sus siglas en inglés) contra **Amtrak**.

**Debe verificar este cargo firmándolo a través del Portal Público de la EEOC. Si no verifica el cargo, la EEOC puede archivarlo sin tomar ninguna otra medida. Por favor, fírmelo en el plazo de 10 días a partir del 03/30/2026.**

Si tiene preguntas sobre este cargo, póngase en contacto con NOHEMI ENRIQUEZ a NOHEMI.ENRIQUEZ@EEOC.GOV o al (202) 921-3278.

**Para firmar su cargo:**

1. Vaya al Portal Público de la EEOC
2. Seleccione "My Cases."
3. Si ya tiene una cuenta en el Portal Público de la EEOC asociada a su dirección de correo electrónico teamiciag@hotmail.com ingrese esa dirección de correo electrónico y su contraseña, y haga clic en "Sign In."
4. Si aún no tiene una cuenta en el Portal Público de la EEOC asociada a su dirección de correo electrónico teamiciag@hotmail.com haga clic en "Register" and follow the instructions. y siga las instrucciones. (Asegúrese de utilizar su dirección de correo electrónico teamiciag@hotmail.com.)
5. Una vez que haya iniciado sesión, podrá acceder al cargo y firmarlo. (Lo firmará bajo pena de perjurio, así que revíselo detenidamente).

Después de firmar su cargo, usted y su abogado podrán utilizar el Portal Público de la EEOC para:

- Actualizar su información de contacto.
- Cargar documentos relacionados con su cargo.
- Solicitar la declaración de posición del demandado, si la presenta, y cargar su respuesta a dicha declaración de posición.
- Verificar el estado de su cargo.

Atentamente,

NOHEMI ENRIQUEZ
EQUAL OPPORTUNITY INVESTIGATOR (BILINGUAL-SPANISH)

Teamicia Greene
911 Edgewood Rd
Edgewood Md 21040
443-528-0218